in his official capacity as Governor of the State of Michigan at all, arguments not to proceed 15 minutes per side. May it please the Court, Eric Restucia from the Michigan Attorney General's Office on behalf of the State Defendants. With me at council table is Assistant Attorney General Joseph Freilich. I'd like to reserve three minutes for rebuttal. Thank you. There's two primary points I'd like to advance this morning. The first, that the legal landscape in this case is going to dramatically change once the United States Supreme Court announces a decision in the Toka v. It's already changed in the sense that the law under which the district court ruled has been repealed, and a new law has been enacted trying to take into account the Supreme Court's opinion in Miller, right? That's right. That's part of the reason that Toka is so significant. The second point I want to make is, of course, that the State's position that Heck v. Humphrey should have governed in this case should have been dismissed. But on that first point, on Toka, once Toka reaches a decision, and it's going to be in the March call and so it will be decided by the end of June of this year, if the United States Supreme Court rules that Miller v. Alabama is retroactive, that will trigger Michigan's sentencing statute. And all these offenders, whether named plaintiffs or all the prisoners, regardless of when they were originally sentenced, will have to be resentenced, all of them. And at resentencing, there's only two options. There's two sentences that the trial courts will be able to impose. One will be life without parole, which Miller said will be a rare circumstance, or a term of years. On the low end, Michigan has an indeterminate sentencing scheme, so it could get 25 to 60 or 40 to 60. So no one will be on a sentence of life with the opportunity for parole. Counsel, we're an appellate court, as you know. What will we have to review as an appellate court, whatever the Supreme Court does, in light of the change by the legislature? We don't have anything on that subject from the district court, nor on the subject of Miller, and obviously on the subject of how any TACA ruling should affect anything. We've got nothing to review that is pertinent to the issues that you're raising. So what is it we're going to be reviewing as an appellate court? Well, what I'm anticipating is that this court would wait to see what happens in June, I don't know, why shouldn't we just, the case is now moved, and why shouldn't we enter an order to that effect, and then the parties or the plaintiffs can see if they want to continue to be plaintiffs. Who knows? That's a friendly question in my view. In fact, I think the right answer is really under Heck v. Humphrey, that they have an opportunity for habeas relief. That these are really challenges to the validity of the sentences. Why is this, that's where I'm struggling. Okay. I don't understand the basis of the claim that it is a challenge to their conviction when what they're seeking is prospective relief based on what the parole board could be ordered to do, based on the constitutionality of the removal of jurisdiction from the parole board. How is that, that's not habeas, how is that not distinct? Well, the question is this, if the parole statute is unconstitutional, does that necessarily imply the invalidity of the sentence, of all of these prisoners' sentences? But there are other prisoners with that very sentence that are eligible for parole. So why would they not retain their sentence and now fall within the jurisdiction of the parole board? Well, all of these offenders under Michigan law, in the absence of a Miller decision, are life without the opportunity for parole. So the Miller holding is this, Miller holds the 8th Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders. That's exactly what the Michigan scheme did. But it did it in a particular way. Right. It did not do it by having a sentence. If you went back and read what their sentence said, it would look no different from someone else who is within the jurisdiction of the parole board, correct? That's true. So why can't you remedy this just like Michigan did, I think, in the Bullock case, where it said, well, we don't have to go back and re-sentence these people because the sentence is not what is at issue. We will simply tell the parole board, you now have jurisdiction. The sentence stays the same. Let me quibble with you a little. Okay. In Bullock, they said life without parole is an improper sentence. In Miller, life without parole might be a proper sentence. It's the process by which you reach that decision. You can impose life without parole, but you have to have an individualized sentence. So once we know that in this challenge that the parole statute is unconstitutional, we know by that decision that the process for the decisions for all these offenders was unconstitutional. If the analysis that gives you relief in 1983 also requires the conclusion that the sentences themselves are invalid, you can't obtain relief in 1983. You have to go to habeas first. And I think it's telling if you look at both arguments advanced by plaintiffs below and by the analysis of the district court below. Because the plaintiffs argued this in their motion for a summary judgment. Do you want us to hold something about the procedural plaintiffs have got to be in and whether they have to bring the case after the Supreme Court rules, whether they have to bring the case as a habeas case or they can bring it as a 1980? Do you want us to rule on that now? I don't think you have to now. Because in a way, your point, that's why my first point out of the box is we should wait for TOCA, and if TOCA finds it to be retroactive, this case is clearly moved. District court, we're not a legislative body here. I agree. I mean the district court has got to, we have to review something by a district court. And what are we going to review exactly? It seems to me the Heck v. Humphrey issue can be resolved. I don't think the court needs to reach it. If the TOCA decision comes out and it's retroactive, it seems like it's easy, then it is clearly moved. I don't see how. The real issue is what happens if it does not come back. I think that's right. It's retroactive. Exactly. I'm with you. Have you and your other side discussed what kind of order you might be able to agree that we should enter? It's the state's position ultimately that the plaintiff's opportunity for relief and their resentencing is under TOCA. If the United States Supreme Court says this is not retroactive, the idea that these plaintiffs could circumvent that and challenge convictions and sentences that go back to 1962. What the Supreme Court is going to do? The district court hasn't ruled on anything? You haven't made that argument yet anywhere? I don't understand. If the court wanted to do this, it's possible. Another avenue of relief consistent with what you're suggesting is regardless of how TOCA comes down, to send it back to the district court. That's another possible avenue for allow because obviously our arguments would be, again, the district court decision here occurred before the Miller decision came down. It's clear after Miller that this really is a habeas claim. Why is it clear? Why is it clear that this is a habeas claim? Because the Miller decision talked about the scheme. For example, in Graham. If you think about the Graham decision where they said life without parole is a categorically prohibited punishment for someone who wasn't convicted of a homicide offense. In the Florida scheme, all the sentence said was life. It didn't say life without parole. Are you aware of any other challenges under Miller other than this case that have been brought under 1983? And while you're answering this habeas question, if you could answer that also. I am not aware of any other cases. All the other cases have treated this under Teague. The 2255 cases, there are five or six federal cases that looked at this under 2255, and there's numerous state courts all looking at this under Teague for the collateral review. But, in fact, the interesting... Dependent upon what you're reviewing. If it came up to them as collateral review or if it came up to them as habeas, of course they're looking at it in that context. Yours did not come in that context. Yours came under 1983. Let me make two points. The primary case in Michigan, the state case, went to Michigan Supreme Court was Raymond Karp. Now, Raymond Karp did file a habeas petition, and it's pending right now. He filed it, in fact, two months before the plaintiffs filed this 1983 action, which is an indication to me of what would be the proper method of bringing this kind of claim. Because, of course, if it's true that you can... Oh, let me just finish the Graham point. In Graham, the court was looking at a scheme in Florida that said life sentence, and they had abrogated their parole system. And they said the effect of that is life without parole. It's the same thing with the Michigan sentencing scheme. They said this is a scheme that imposes life without the opportunity for parole. So that by challenging the lack of parole, you are challenging the sentence in a way that's not true in Wilkinson v. Dodson. This is fundamentally different. Like in Bullock, life without parole is then the sentence that's appropriate. Here we don't know what the sentence that's appropriate is because it has to... The Michigan courts, in reviewing these questions, said the proper remedy, in the absence of legislative fix, is resentencing, because you cannot impose a life without parole sentence without an individualized consideration. And if you look at what the courts... You're talking about now the Michigan... The Michigan courts, right. You're talking about what the Michigan law is. Exactly. I think the Michigan courts are the best indication of what Michigan law is. It's telling... Let me ask you this. What difference does it make, really, other than some mechanical lawyer-like legalistic argument, whether it's 1983 or whether it's a habeas case? I mean, if the result in the end is going to be the same, what difference does it make? Well, the process matters because the... Well, sometimes it matters, but in the end the result matters. I think that their success, whether these plaintiffs are entitled to relief ultimately should be governed by TOCA. Their arguments below, they've essentially... How do you account for Danforth? How can you say that a decision on a direct appeal or on a collateral challenge that is taken up through the habeas mechanism in the face of Danforth, which very clearly says habeas is a relief form. The determination by the Supreme Court of new constitutional rules is not about the invention of that rule in Teague. It is about the determination of whether that relief is available. So doesn't Danforth really foreclose your argument that you can't look at the retrospective or the prospective rights that attach to a rule that the Supreme Court articulates? When the Supreme Court says we have created, we have located in Miller this rule about the rights of juveniles. When they recognize that right, Danforth tells us... Let me find that so that we're all on the same page. What we're actually determining when we assess the retroactivity of a new rule is not the temporal scope of the newly announced right, but whether a violation of the right that occurred prior to the announcement of the new rule will entitle a criminal defendant to the relief sought. So doesn't Danforth make it clear that it's about the relief you request? Here the relief request is 1983. The response is they're seeking that relief, but the question is, in getting there, does the answer... For example, in the Heck case, they weren't looking to upset the conviction. In Heck, they wanted to show that the investigation was improper and they wanted to get money damages. But in order to get there... But that's not... Well, there are no money damages, but the concept is still applicable. The concept is, in order to get to your relief, if you have to show that the sentence was invalid in order to get to your relief, then you have to go to 1983. Isn't that the question before us? Is this an invalidity of the sentence? And I think that... Or is this about the constitutionality under the rule articulated in Miller of the parole statute? I think the answer... The district court below, in its January 30, 2013, order said, Michigan's, this is a quote, the sentencing scheme is clearly unconstitutional under Miller. It recognized that in order to get to this relief, it also had to say the sentences were bad. And, of course, that's true. If Miller applies, there is no dispute that all of these sentences were unconstitutionally imposed and would have to be redone. So if... Why, if there is the ability to say, leave the sentence exactly as it is written, go over there and tell the parole board, take these people up? The Michigan Court of Appeals had that very issue in its intermediate before there was a legislative fix, and it said the proper relief is to remand for resentencing. These sentences are set aside. The judgments are set aside. Was that the one that there was a divided court? There was one divided court. There was CARP, which was a unanimous court. That was an opener dictum. And then Eliasson, which followed, was a 2-1 decision. But that's the best indication of what Michigan law means. In fact, we don't have to go to Michigan law because Miller said Michigan was one of the 29 schemes that impose mandatory life without the opportunity for parole. Let me ask you this question, where life's been on for a while. Do you think after the Supreme Court rules here, taking into account the Michigan case law and the Michigan statutes, that you and the plaintiffs in the case can get on the same wavelength? My guess is if TOCA comes back and it's retroactive, I suspect we will because if I'm a criminal defendant, I would prefer to have an opportunity to get a 25 to 60 or 40. Why should we order you to do something that you may very well, depending on how the situation develops, work it out yourselves? In my view, it's always better for a lawsuit to be resolved by the parties, or almost always, rather than to have the court issuing injunctions and having to impose remedies and so on. And if it's likely or a good chance that you can work this out, why not? I'm not against that, of course. I wasn't on the part of the trial team. I'm kind of the appellate guy, so I don't want to speak out of school about what's going on. But if the court was thinking, let's not answer a question we don't have to reach, wait for TOCA, or somehow... But you've already conceded, haven't you, that it depends on what happens in TOCA. TOCA's retroactive. You all are probably all going to be able to sit down and figure this out. But if it is not... Then we're in litigation still. Then you're in litigation still. And the issue that was brought is still valid and before us. You're going to argue it doesn't matter, and they're going to argue it absolutely matters. Why couldn't you work it out even if the Supreme Court holds that it's not retroactive? Well, in that circumstance, we would say the court has spoken and that you're foreclosed from relief. I mean, these cases go back to 1962. Why do you think they're going to... If they're reading the same opinion you are, why do you think they're necessarily going to disagree with you? Well, we'll leave that to Ms. LaBelle. I see my light's on now. I have three minutes for rebuttal. Unless there's any further questions, thank you. Thank you, Dennis. Deborah LaBelle on behalf of the plaintiffs. I think I should first address why we're here and the questions regarding mootness because I don't believe this case is moot or will become moot. So we're here on the defendant's appeal of the district court's remedial scheme to remedy an unconstitutional statute. So you said that you don't believe that it will become moot regardless of what the Supreme Court decides. So if they decide that it's not retroactive, then what are the issues that... What are the answers or the issues that you believe still before this court with respect to your case? Right. For two years, we've heard from the defendants, dismiss because Miller is not retroactive. Now we're hearing from defendants, this court should, I guess, he should dismiss his appeal or this court shouldn't rule because impending in the future is a decision in front of the Supreme Court that may, if they determine that it's a federal question, which is the first question, decide that Miller is retroactive. But this case is not a Miller case. This case is about a statute that precludes that the court found unconstitutional and that defendants don't disagree because they have said below that Miller and Graham require that states provide minors with a meaningful opportunity for release on parole. And that is what this case is about, the meaningful opportunity for release. It doesn't challenge the conviction. It doesn't challenge the sentence. But it says that these youth must have a meaningful opportunity for release. And that issue is squarely before this court right now, whether the court abused its discretion in determining in light of that unconstitutionality what the relief is. And whatever happens... This is completely different from the case that the district court decided. So... Right? Because it didn't have the new legislation after Miller. So how can we review something that has been displaced by Michigan as well as by responding to the Supreme Court and something that in the future the Supreme Court may tell us we don't know what? What is it we're going to be reviewing? First, the new legislation, if you want to get into it, which I don't think it's before the court because it's somewhere in the future it may be. But if you want to get into it, it did not repeal the parole statute. And it replaces... I mean, what they're doing is they're saying, listen, instead of what the judge determined, what Judge O'Meara said was the remedy for this unconstitutional statute, we've got a better remedy. And our remedy is 25 to life, or 60 years, which given that there's no dispute that the average lifespan of youth in the Michigan prisons is 51 years. You want to attack that, right? Our case, when we go back down, if Miller happens... But we don't have that question before us. You don't have that question. But what question do we have before us? The question you have is, did the district court abuse its discretion in doing a remedy for an unconstitutional statute that still exists and that defendants have refused to move forward on? The parole statute. Because the legislation did not repeal that. You want us to hold that the parole statute is what? It still exists, and they're still denying youth... The defendants are still enforcing this statute, and for two years now, after it's been declared unconstitutional, they've been refusing to allow these youth any opportunity for parole. That's what's before the court, and they will continue to do that unless this court affirms the district court's order as to what they need to do. And while we're standing here, two of these youth have died. Two of them have died. The district court ruled in the context of a completely different case. It didn't rule in the context of Miller. It didn't rule in the context of the new Michigan law. It ruled in the context of old law that is now invalid in the sense it's been completely repealed. So why should we not take into account the context in which the district court ruled? And there may be an entirely new context. Sir, Your Honor, they did not repeal the parole statute. And, in fact, what the new legislation does is it has a trigger. If certain things happen in the future, then there's a trigger that happens. There's also proposals for amending that. We don't know what's going to happen. That legislation also provides the best option is 25 to life. It may be that if defendants want to present to the district court below, since they want to pursue their appeal, if this court affirms the relief, which is still, nothing has changed because none of this comes into effect unless the Supreme Court gets past the federal thing and determines retroactive. At that time, defendants could go to the district court and say, listen, we have a better proposal for remedying the unconstitutionality of what's going on here. And the case may look more like the Wershey case that this court, a panel of this court, for our perspective. We'd say, okay, but you still haven't provided a meaningful opportunity for release because as the district court- No one has taken up the new act because we don't know yet whether it's retroactive. Right. It doesn't apply to anyone. So that is a potentiality that could begin at the district court level for review. Right now, before us, is your argument, accepted by the district court, that the parole statute is unconstitutional. Correct? Correct, Your Honor. So give us your best argument for why the habeas relief is distinct from the prospective relief requested under 1983. Thank you, Your Honor. And I think that it is. And what you have to look at is habeas relief challenges unlawful detention. That is not what's going on here. And the court, both the Supreme Court and both Skinner and Dodson, and this court following these cases, said what you have to look at is what happens if you're successful. What happens if successful? If we're successful, as the district court and this court affirms, they have an opportunity to demonstrate to a parole board, based on maturation and growth, that they should be released. An opportunity for it. But it doesn't necessarily result in any change in their confinement because, as this court said in the Wershe case just in August of last year, that success would not necessarily affect the duration of a sentence because prison officials would retain the discretion regarding whether to grant them parole or not. And that's what the court said in the Dodson case, too, which was an eligibility for parole. It said, listen, if they're successful, they might get parole, but they may not. The success is in the eligibility. And the unconstitutionality before us is in the parole denial of jurisdiction. Exactly, Your Honor. You want us to write an opinion that says that the parole statute in Michigan, in the context of the former law and before Miller, you want us to write an opinion saying that the parole statute is unconstitutional. In the context of whatever the new law in Michigan and whatever the Supreme Court does, you want us now to write an opinion that says the Michigan parole statute is unconstitutional. No, I want an opinion that affirms the district court and says to the extent that defendants, if ever, that law comes into effect as to this group of people, which it is not right now, that defendants are certainly free to go to the district court and propose that as a mechanism to provide meaningful opportunity for parole. We don't know. I mean, we're going to speculate about what the law of the future is and then rule on it? No, that's exactly what I'm asking this court not to do. But you want us, I mean, you agree that we should wait until the Supreme Court decides? I do not. Do not. I say, Godspeed, that right before this court is an issue that has not, that the parole statute's in effect, there's a stay that defendants argued for and got. You don't believe that the TOCA case affects this at all? It may or may not, Your Honor. It may or may not. And I do not think that we should wait for June or how the defendants decide to implement TOCA based on the legislation when right before this court, on stay, is the district court's order to start providing parole opportunities for these youth. Why would we take up that issue if the decision of the Supreme Court would necessitate our review in a different manner? If the Supreme Court makes it retroactive, then you've got the question that you may then bring to the district court of the propriety of the new act. And if it does not find it to be retroactive, then wouldn't our analysis somewhat differ in order to determine whether there is a differentiation between the determination of the Supreme Court and the determination that we are asked to make under the Eighth Amendment for prospective relief? I think if they say it's not retroactive, then we're in no different situation than we are right today. And that the district court had in front of it. The district court had in front of it Michigan court saying Miller's not retroactive. And he said it's not about Miller retroactivity. It's not about resentencing. It's about a parole statute that deprives them of the opportunity for parole. That's what this case is about. It's not a resentencing case. The Supreme Court's articulation of why it is not retroactive does not impact the reasoning that we would need to undertake in reviewing your claim. I don't think so, Your Honor. It would be no different than what the Michigan Supreme Court said. It's just not retroactive for a number of reasons. We think it's procedural, not substantive. But it goes to their sentence. We are not challenging their sentence or their conviction. We're saying that under Graham and Miller, the parole statute which denies them any opportunity for release is unconstitutional. That's what the district court found. And defendants have not disputed the unconstitutionality of that. What we're here on is what is the relief. And if the Supreme Court then, the Supreme Court, of course, could say it's not a federal question, so we're not even going to reach this, which is one of the questions before it. But if they say Does it make a difference the rationale that they use in relationship to the decision in Danforth? I don't think so. You've got a swing vote that agreed with one of those cases and dissented in the other. I think Miller is going to be retroactive. I mean, I think the court took it, and it's going to be retroactive. But we should not have to wait years. And literally, we're talking years. Because although it's not before you, and I think this is for the district court to hash out, that triggered legislation provides that a whole scheme that results in it could be years before people even get resentenced. Literally, five to ten years given that scheme because of the way it's set out. And that what they get is 25 to life, which is without a meaningful opportunity for parole. What we're here for today is the district court looking in undisputed Is that a second suit? Pardon? Is that a second suit challenging the propriety of a different suit? Right. Challenging the propriety of the U.S.? I think it's an amended complaint, Your Honor. Okay. That is more like Worshey that says, okay. What is an amended complaint? If, in fact, all of this happens in the future, we may have to amend our complaint below. Bring a new lawsuit, basically. I don't think so. We'd still be arguing a meaningful Amend your complaint then. Well, I think we'd be arguing that the change, in fact, still require what the court ordered, a meaningful opportunity for parole. Let me ask you about Dontez Tillman. Yes. In your case. His conviction was not final at the time of Miller. Correct. Is he covered? Has he been resentenced? He has not. And what position has your opposition taken on his position in this matter? None that I know of, Your Honor. I mean, our argument is that Dontez is covered by the decision of the court. Not by the new act? Not by the new act. Okay. I'm sorry. Proceed. No. And so I think what we're hearing is the district court said, here's what you have to do. Present to me, and this is why we're up on an injunctive. There's no final decision below. We're up on an injunction because the defendant said, listen, the scheme, the district court said, propose a fair and equitable scheme for parole review. And he set some parameters. And the majority of the parameters defendants didn't disagree with. I mean, it's hard to disagree with a parameter that says make a fair and reasonable process for reviewing these people to see who have been there since they're 14, 15, 16, and 17 to see if they're no longer a danger and based on maturation and growth they can be released. What is your position going to be if the Supreme Court, as you think it will, holds that Miller is retroactive and therefore applies to all 365, the effect of it would be all 365 juveniles now being held in Michigan? And what is your position going to be? I mean, you take the position it should be retroactive, so you'll be right. So what does that mean then in terms of what you want to do? We would argue that the district court, that if defendants are saying, say you affirm the district court and we go back and they have to do a proposal and we start parole hearings. Why don't we just send it back to the district court and say what's going to happen about retroactivity and how this is going to be administered in Michigan is going to be heavily influenced by what the Supreme Court decides. And then let you do your amendment. And if you want to, depending on what you can work out with the state, and proceed from that point. Your Honor, I think if this court affirmed the district court and sent it back and they developed a process. Why should we send it back if we're going to affirm what they've done? Affirm and then go back to the district court. Only if we affirm we don't remand and reverse. We're not at a final decision, so it would go back, the stay would be lifted. The defendants would propose a plan for parole hearings if six months or eight months from now they say, you know what, we would like instead of this, we think we can get a meaningful opportunity for release by resentencing. Something that they have argued to the Michigan Supreme Court they won't do because it's so expensive. That's their position they took there and the Supreme Court denied retroactivity based on that expense. So in part, and they may say we want to do it differently, Judge. The Judge can then consider whether that alternative proposal would in fact provide meaningful opportunity for release. And we would say without the court's additional criteria for the parole board, it would not. And the court would still have to provide what we're here today for, a process that actually looks at these youth. Because the resentencing that the legislature plans, if you want to give 25 to life or 40 to life, you don't even have to consider mitigating factors in Miller. The legislation is incredibly problematic. It's your position, as I understand it, that the relief that you envision would not require this individualized resentencing. It would require the consideration of these factors and the determination about whether or not parole is warranted for an individual defendant. Exactly, Your Honor. Thank you. My time is up. Thank you. I just have three quick points in rebuttal. I think the overarching mistake being made by plaintiffs here is that Miller and Graham are not parole cases, they're sentencing cases. The suggestion that the plaintiffs here are not challenging the sentence is belied by their own filing. In their August 7, 2012 Motion for Summary Judgment, on page 11 to page 634 of the page ID, they say plaintiffs' sentences are categorically unconstitutional as well. This idea that you can tease out the parole statute from the sentences is untrue. That's why this has to be undertaken. But their argument teases out the parole statute from the sentencing. You've got to concede that. They're trying to, but I don't think they can be delinked. But that's the basis of their argument. Right. No, I think that's right. That's right. I think also there's a significant point with respect to this prospective injunctive relief. The parole statute now is not unconstitutional. It's only unconstitutional as applied to a set of offenders whose cases have already reached finality. So that portion of the parole statute is unconstitutional. As applied to them if Miller applies. This is all a question of retroactivity. This court, what is before us today, this judge has already decided that Miller makes that portion of the parole statute unconstitutional. You may get a different call out of the Supreme Court, but right now what's before us is his order. Correct? You're exactly right. My position is we already knew that from Miller. Footnote 13 identified Michigan's parole statute and said it was unconstitutional essentially. We know it was unconstitutional. The only question is does it apply to these cases that are final on direct review? And the idea that you can challenge that, I mean let's say Toca finds it not to be retroactive. The idea that you can circumvent that with a 1983 action and then challenge cases that were already final on direct review that go back to 1962 seems like an untenable position to me.  Correct? That's what we hold in our hands. We hold that argument and we hold your argument. Your argument is it's habeas in other clothing. Their argument is it is not. It is a 1983 claim. That's the issue. If Toca is found not to be retroactive, that seems to me still to be a live issue. If it is retroactive, I think the issue is resolved. Last point, which is... Your opposing counsel just said that what we have before us now is not a final decision on the outcome of the case. Would you agree with that? Well, the posture of the case is we filed both a notice and we filed it in 1292 and the court took it in 1292 as an injunction. You're up here on interlocutory appeal and it's going to go back down one way or another. The point I want to make is who decides the remedy? One of the points made by plaintiffs is the district court judge below should be the remedy. The Michigan legislature went through this terrible fight to create this new statutory scheme. Of course, this statutory scheme now has been essentially set aside by this district court decision. If Toca is found to be unconstitutional, the whole scheme is retroactive. The question is whether it applies to all or some, depending upon what happens in Toca. If Toca finds it to be retroactive, if this somehow can stand, we have all this statutory framework about getting a term of years. Of course, a term of years is very different than parolable life. The Michigan offenders essentially are released shortly after their earliest release date. The whole schemes are different. If the district court decision is somehow affirmed, then essentially the district court has rewritten Michigan's whole parole scheme. It's like a separate statutory code for these offenders in the face of Michigan's legislative scheme. I guess I would ask you where in the district court's order do you see the alteration of that scheme? I'm looking at that and it says notice. It doesn't order anything to be done at 10 years, correct? The invalidated bail issue. Yes, it's notice. It's only notice. And a fair and reasonable opportunity for parole, correct? There are specific provisions. Help me understand what it is about this order that invalidates. It seems to me that it is a far more narrow order than your argument would evidence. The eight-point plan, first it invalidates the judicial veto. It no longer gives the discretion. Does it invalidate the judicial veto as relative to controlling? There will be no vetoes by the sentencing judge or anyone else, but that does not bar the parole board from considering what the judge would have to say, correct? That's true, but the way Michigan law would then operate is you'd have all parolable lifers except for the one subject to judge the district court's order. They'd be treated one way. These offenders would be treated this way. He also found them, or the district court found them to be eligible for parole after 10 years, even though the 1992 statute said that's a second. I guess I'm struggling to make sure we're really hewing to the language in this order. It doesn't say you get it. It says give notice to all such persons who have completed 10 years of imprisonment that their eligibility for parole will be considered in a meaningful and realistic manner. I think we just have to look very clearly at what this judge did. That's number two. The suggestion was that they would be eligible for parole after 10 years when the statute provides anyone convicted after 10 years. Well, I'm sorry. I don't see where that suggestion is. I may be misreading it then. But in the state's view, you work through those eight provisions that he provides, and it stands in contrast to the way the parole system operates for everybody else. The way the Department of Corrections would have to operate is they'd have two sets of standards. They'd have a statutory code for all non-Hill case offenders, and then the Hill case would have its own set of rules all governed by the district court. So my point to you is if TOCA is found to be retroactive, it's a legislative scheme which should govern. And that's the argument you'd make to the district court if it went back down. And if they want to bring a challenge to that, they can bring a new claim. The legislative scheme now says they have to serve at least 25 years. Twenty-five to 40. I'm sorry, 25 to 60. For new people. The question is what happens to those in the back? And if TOCA is found to be retroactive, everyone would be resentenced. They're not suggesting what the district court did below is ordered no resentencing. The constitutional infirmity here was a failure to have an individualized sentence. And yet the remedy being imposed is one that changes the nature of the punishment for all of these offenders. It fundamentally alters the punishment. That's why the Michigan courts, when they had this issue, said we're sending them back for resentencing to cure the constitutional injury. Whereas this remedy just strips out the no parole provision and gives them essentially a new sentence. It changes the nature of the punishment that these people are subject to. Instead of being life without parole, now they're getting parolable life. The remedy is, the unconstitutionality is the lack of individualized consideration. The state loses the opportunity. There are some of the worst offenders in Michigan, not all, but some of these people are very dangerous. The idea that we can't give them life without parole out of resentencing is unfair. The fact that they are most dangerous, isn't that one of those factors that the parole board considers in reviewing those factors? True, but the legislative scheme, though, says we're afraid for some of our most dangerous offenders. Well, are they not afraid of the parole board paroling anybody then? You all have already given them the authority and role of making that determination. I assume you trust juveniles just like you trust them with the adults. I don't mean to impugn at all the parole board. I'm just talking about what the legislative scheme is trying to create. Because, obviously, those are people with good will. You know what I'm saying. My point, though, is the legislature has said there can be some people for whom life without parole is a proper sentence. This remedy forecloses the ability of the state to do that. Everyone becomes parole eligible. My point, though, is a legislative one. These are all secondary points. Well, because one becomes eligible doesn't mean that one gets parole. True, I agree. You're compressing that and that's... Well, but that's... I am compressing, perhaps. I understand your position, even though we may have a different interpretation. All right, no, I understand. Thank you. Thank you. Can I ask a question finally here? Is it true to say that if we affirm the district court's ruling on the 10-year requirement, that that, in effect, holds the statute that was subsequently adopted by Michigan as to the 25-year provision, holds that unconstitutional? What it does is it displaces it. Well... It has that effect. You're right. And that's why I'm kind of jumping up and down. It says that the statute that Michigan adopted, which has the 25-year provision in it, may not be enforced. That's right. That's the effect of the decision. Thank you. Thank you, Adam. Thank you both for your arguments. Thank you, Adam.